UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

V.                                          NO. 10-331

DARRYL MOORE                                SECTION "F"


ORDER AND REASONS

Before the Court is Darryl Moore's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. For the reasons that follow, the motion is DENIED.

**Background**

Darryl Moore, a federal prisoner, asks this Court to vacate his conviction and sentence on the basis that his counsel's erroneous advice rendered his Rule 11(c)(1)(C) guilty plea involuntary.

On March 23, 2012, a federal grand jury named Darryl Moore in 13 counts of a multi-defendant second superseding indictment. Count 1, in particular, charged Moore with conspiracy to distribute and to possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Two months later, on May 31, 2012, Moore pleaded guilty to all 13 counts in which he was charged, including the one-kilogram heroin conspiracy count, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). In exchange for his plea, the government

agreed not to file a Bill of Information, pursuant to 21 U.S.C. § 851(a), which, according to the plea agreement, would have mandated a sentence of life imprisonment, in light of Moore's two prior felony drug convictions.  The parties also agreed to a specific sentence of 180 months' imprisonment, and Moore waived the right to appeal his conviction or sentence.  He retained, however, the rights to challenge a sentence imposed in excess of a statutory maximum and to bring a claim for ineffective assistance of counsel.

During the plea colloquy, U.S. District Judge Berrigan advised Moore of his rights and explained the elements that the government would have to prove if the matter proceeded to trial.[1] After Judge Berrigan detailed the elements that the government would be required to prove, Moore agreed to plead guilty and

---

[1] With respect to the one-kilogram heroin conspiracy count, Judge Berrigan advised that
> the government would be required to prove by evidence and beyond a reasonable doubt. . . [F]irst, that you knowingly possessed a controlled substance; Second, that it was, in fact, heroin; Third, that you possessed it with the intent to distribute it; and fourth, that you possessed at leas[t] 1 kilogram of the substance.  The government would also have to prove the following: First, that you and at least one other person made an agreement to knowingly possess with intent to distribute at least 1 kilogram of heroin as charged in the Indictment; Second, that you knew the unlawful purpose of the agreement and that you joined in it willfully, that is, with the intent to further the unlawful purpose; And third, that one of the conspirators during the existence of the conspiracy knowingly committed at [l]east one of the overt acts described in the Indictment in order to accomplish some object of the conspiracy.

acknowledged that he was pleading guilty because he was in fact guilty of the offenses charged. He also affirmed that he had reviewed the factual basis with his attorney and that it was correct with respect to his actions.

At the end of the rearraignment, Judge Berrigan conditionally adjudged Moore guilty with respect to his plea but deferred accepting the Rule 11(c)(1)(C) plea agreement pending review of a Presentence Investigation Report. On October 16, 2012, the U.S. Probation Office released its Final Presentence Investigation Report, which determined that the conspiracy to which Moore had pleaded guilty involved the trafficking of at least one kilogram of heroin. The PSR noted that the amount of drugs seized was less than one kilogram of heroin but determined that the conspiracy involved at least one kilogram based on analysis of wiretap conversations and co-conspirator statements.

When Moore appeared for sentencing on December 5, 2012, he objected to the PSR's conclusion that he was responsible for one kilogram of heroin. Judge Berrigan overruled Moore's objection and denied his motion to withdraw his Rule 11(c)(1)(C) plea, citing Moore's stipulation in the factual basis and her own review of the case. In response to Moore's interjection that "the drugs, the drugs that you're talking about wasn't my drugs," Judge Berrigan stated:

> Mr. Moore, don't dig yourself any deeper than you're already in. All right. This case does involve a Rule 11(c)(1)(C) agreement . . . . You objected to the conclusion in the PSR that you were responsible for one kilogram of heroin, and as noted in the factual basis you signed off on that and admitted to that, so I am rejecting that objection.
> . . .
> Mr. Moore, at the time that you entered your plea it was pursuant to a plea agreement, and at this point in time I think it in your best interest I am not going to let you withdraw the plea and so now I am going to unconditionally accept the previously tendered plea of guilty.
> . . .
> The sentence imposed is a stipulated sentence of 180 months under the Rule 11(c)(1)(C) agreement. Even though it is above the guideline levels, I am in favor of it because the government chose not to file a bill which would have resulted in a life sentence . . . .

Moore timely appealed, after which his counsel of record filed an Anders brief, claiming that the appeal presented no nonfrivolous issue for appellate review. Agreeing with Moore's counsel, the Fifth Circuit dismissed the appeal as frivolous on April 2, 2014. The Supreme Court subsequently denied Moore's petition for a writ of certiorari on October 5, 2015.

Moore now moves the Court for post-conviction relief pursuant to 28 U.S.C. § 2255, asserting four ineffective assistance of counsel claims.[2]

---

[2] Moore submits that his counsel was constitutionally ineffective for: (1) advising him to stipulate to one kilogram or more of heroin with respect to the factual basis for his plea, which resulted in a Rule 11(c)(1)(C) binding plea, (2) failing to object to the Rule 11(c)(1)(C) plea colloquy, which advised of a mandatory penalty of life imprisonment, (3) failing to object to co-defendant Henry Lacour's post-arrest proffer statements that Lacour

4

I.

A prisoner may file a habeas corpus petition pursuant to 28 U.S.C. § 2255, claiming a right to release from custody on the ground that a sentence ordered by a federal court "was imposed in violation of the Constitution or the laws of the United States." 28 U.S.C. § 2255(a).[3] "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Gaudet, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). A claim of error that is neither constitutional nor jurisdictional is not cognizable in a § 2255 proceeding unless it constitutes a "fundamental" error that "renders the entire proceeding irregular and invalid." United States v. Addonizio, 442 U.S. 178, 186 (1979).

The Court "may entertain and determine [a motion to vacate] without requiring the production of the prisoner at the hearing."

---

purchased 21 grams of heroin from Moore in 2008, and (4) filing an Anders brief on direct appeal, rather than appealing the trial court's application of Section 841(a)'s threshold requirement.
[3] Section 2255 identifies only four bases that might support a motion to vacate: (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose [the] sentence," (3) "the sentence . . . exce[eds] the maximum authorized by law," or (4) the sentence is "otherwise subject to collateral attack." Id.

28 U.S.C. § 2255(c). Having considered the record, the motion, and the government's response, the Court finds that the record is adequate to address the petitioner's claims and to dispose of them as a matter of law. Accordingly, no evidentiary hearing is necessary. See United States v. Walker, 68 F.3d 931, 934 (5th Cir. 1995) ("[I]f on th[e] record we can conclude as a matter of law that [the petitioner] cannot establish one or both of the elements necessary to establish his constitutional claim, then an evidentiary hearing is not necessary . . . .").

A habeas petitioner has the burden of establishing his claims by a preponderance of the evidence. Wright v. United States, 624 F.2d 557, 558 (5th Cir. 1980) (citations omitted). If the Court finds that the petitioner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

## II.

A motion to vacate filed under § 2255 is subject to a one-year limitations period, which runs from the latest of: (1) when the judgment of conviction becomes final; (2) when a government-created impediment to filing the motion is removed; (3) when the Supreme Court initially recognized as a new right the legal predicate for the motion, if that right has been made retroactively applicable to cases on collateral review; or (4) when the

petitioner could have discovered, through due diligence, the factual predicate for the motion. 28 U.S.C. § 2255(f). Although the one-year limitations period does not operate as a jurisdictional bar, the Fifth Circuit cautions that equitable tolling should be applied only in "rare and exceptional circumstances." Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998). Indeed, tolling is appropriate only where the petitioner shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' of timely filing his § 2255 motion." United States v. Petty, 530 F.3d 361, 365 (5th Cir. 2008) (quoting Lawrence v. Florida, 549 U.S. 327, 336 (2007)).

The government contends that Moore's motion to vacate must be dismissed as untimely because it was filed more than one year after his conviction became final. The government submits that Moore's conviction became final on October 5, 2015 when the U.S. Supreme Court denied his petition for a writ of certiorari. See Clay v. United States, 537 U.S. 522, 527 (2003) ("Finality attaches when [the Supreme Court] affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."). And the record reflects that Moore filed his pending motion to vacate on June 12, 2017 – more than one year later.

7

Moore counters that his motion to vacate is timely because he complied with the prison mailbox rule, or in the alternative, because the one-year limitations period should be equitably tolled. Moore submits that he was housed in solitary confinement from August 28, 2016 through October 20, 2016, during which time he handed a completed § 2255 motion to a prison official, who failed to file it on his behalf. Specifically, Moore relates that he was confined in the Special Housing Unit (the "SHU") at FCI Talladega and that he gave the only copy of his motion to vacate to SHU Lieutenant Staten on October 4, 2016. Invoking the "prison mailbox rule," Moore contends that his motion was timely filed because he placed it in a prison official's hands for filing on October 4, 2016, four days before the October 8, 2016 deadline. When he was released from the SHU on October 20, 2016, Moore submits, he asked his wife to contact the clerk of court by way of telephone, and she was advised that no motion to vacate had been received or filed. According to Moore, it then took "extra time to properly conduct research, properly prepare, and file [his] § 2255 motion." In light of these circumstances, Moore urges the Court, in the interest of justice, to equitably toll the one-year limitations period.[4]

---

[4] On June 22, 2017, Moore filed a motion to amend his motion to vacate, in which he purported to submit a memorandum from Lieutenant Staten supporting his equitable tolling argument. Because the Court could locate in the record neither a memorandum

The Court finds that Moore's motion to vacate must be dismissed as untimely because he does not benefit from the prison mailbox rule and has not established that equitable tolling is justified in this case. Under the prison mailbox rule, which was first recognized in Houston v. Lack, 487 U.S. 266, 270-71 (1988), and later codified in Rule 3(d) of the Rules Governing Section 2255 Proceedings for the United States District Court, a prisoner's motion to vacate is deemed filed on the date that it is "deposited in the institution's internal mailing system" for filing. But to receive the benefit of that rule, an inmate is required to declare – under the penalty of perjury - "the date of deposit" and that "first-class postage has been prepaid." See Rules Governing Section 2255 Proceedings, Rule 3(d). Here, neither Moore's initial motion to vacate, nor his amended motion, contains a certification that he prepaid first-class postage.

The Court also finds that the one-year limitations period is not subject to equitable tolling here. Assuming, without deciding, that Moore has met his burden of showing that the loss of his

---

from Lieutenant Staten, nor a statement of any other prison official, the Court ordered Moore to file, on or before August 13, 2019, "an affidavit, verified exhibit, or other sworn statement of Lieutenant Staten in support of his position that he tendered a § 2255 motion to this prison official for filing with this Court in October of 2016." See Order dtd. 7/23/19. The Court subsequently extended Moore's deadline to supplement to August 26, 2019. See Order dtd. 8/20/19. As of the date of this Order and Reasons, no supplement had been received.

9

petition while he was housed in solitary confinement constitutes an extraordinary circumstance that prevented him from timely filing his motion to vacate, he has not established that he diligently pursued his habeas rights. Notably, "[w]hat a petitioner did both before and after the extraordinary circumstances that prevented him from timely filing may indicate whether he was diligent overall." Jackson v. Davis, No. 18-10526, 2019 WL 3521824, at *2 (5th Cir. Aug. 2, 2019).

Moore claims that he placed his original motion to vacate in Lieutenant Staten's hands on October 4, 2016, only four days before the motion was due. To be sure, the Fifth Circuit has "recognized that a component of the obligation to pursue rights diligently is not to wait until near a deadline to make a filing, then seek equitable tolling when something goes awry." Johnson v. Quarterman, 483 F.3d 278, 287-88 (5th Cir. 2007). Moore further states that he learned from the clerk of court on October 20, 2016 that no motion to vacate had been received. Despite being made aware of his so-called dilemma less than two weeks after the filing deadline had passed, Moore failed to take action for eight months, waiting until June of 2017 to file a new motion to vacate and ask the Court to apply equitable tolling.

Because Moore exhibited no urgency in pursuing his habeas rights before or after his initial petition was supposedly lost, he has failed to carry his burden of establishing that equitable

10

tolling is warranted in this case. See Flores v. United States, 719 F. App'x 312, 317 (5th Cir. 2018) (holding that equitable tolling "is not intended for those who sleep on their rights") (internal quotation marks and citations omitted).

III.

Even if Moore's motion was timely, he still would not be entitled to habeas relief under Strickland.

*A.*

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668 (1984).

Ineffective assistance of counsel claims are reviewed under Strickland's familiar two-prong standard, which requires the defendant to "show that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." Id. at 697. Deficient performance is established by showing "that counsel's representation fell below an objective standard of reasonableness." Id. at 688. In applying this standard, a "court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or

omission of counsel was unreasonable in the harsh light of hindsight." Bell v. Cone, 535 U.S. 685, 702 (2002). In other words, "judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689.

The prejudice prong requires the defendant to show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Significantly, "[t]his is a heavy burden which requires a 'substantial,' and not just a 'conceivable,' likelihood of a different result." United States v. Wines, 691 F.3d 599, 604 (5th Cir. 2012) (internal citations omitted). Finally, because the petitioner must make both showings to obtain habeas relief, there is no requirement that a court "address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.

*B.*

*i.*

Moore asserts that his counsel was constitutionally ineffective in the following four ways: (1) advising him to stipulate to one kilogram or more of heroin with respect to the factual basis for his plea, which resulted in a Rule 11(c)(1)(C) binding plea, (2) failing to object to the Rule 11(c)(1)(C) plea colloquy, which advised of a mandatory penalty of life imprisonment, (3) failing to object to co-defendant Henry Lacour's

post-arrest proffer statements that Lacour purchased 21 grams of heroin from Moore in 2008, and (4) filing an Anders brief on direct appeal, rather than appealing the trial court's application of Section 841(a)'s threshold requirement.  Because all four of Moore's grounds for habeas relief are tethered to the allegation that his counsel provided erroneous advice, which rendered his Rule 11(c)(1)(C) guilty plea involuntary, the Court considers the claims together.

*ii.*

In the context of a guilty plea, a petitioner establishes prejudice by showing a "reasonable probability that, but for counsel's unprofessional errors, he would not have pleaded guilty and would have insisted on going to trial." Lee v. United States, 137 S. Ct. 1958, 1965 (2017) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).  Mindful of Strickland's high bar, the Supreme Court has advised that "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded" but "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." Id. at 1967. "The ultimate question," the Fifth Circuit has emphasized, "is the voluntariness of the plea; thus, '[e]ven where counsel has rendered totally ineffective assistance to a defendant entering a guilty plea, the conviction should be upheld if the plea was voluntary.'" Clarke v. Cain, No. 95-30849, 1996 WL 255287, at *1 (5th Cir. May

13

1, 1996) (quoting United States v. Diaz, 733 F.2d 371, 376 (5th Cir. 1984)).

### iii.

Moore argues that his counsel improperly induced him to plead guilty to a one-kilogram conspiracy when counsel knew that less than 200 grams of heroin had been seized from him personally and that the criminal acts comprising the conspiracy did not net a seizure of at least one kilogram of heroin. Moore's arguments reflect a misunderstanding of conspiracy law.

First, the drug quantity that results in a statutory mandatory minimum sentence for purposes of federal drug trafficking crimes is not limited to the quantity of drugs that an individual defendant actually handled. See United States v. Walker, 750 F. App'x 324, 326 (5th Cir. 2018). To the contrary, the defendant's liability is based on "the quantity of drugs with which he was directly involved *or* that was reasonably foreseeable to him." Id. (emphasis added). Second, "the government need not seize the actual amount charged to meet its burden." Id. Indeed, "[t]estimony can support the verdict if it demonstrates that the amount of drugs attributed to the defendant meets the statutory threshold." Id.

In emphasizing that only 130 grams of heroin was seized from him during the course of the conspiracy, Moore overlooks that the government intercepted wiretap conversations during that time in

which he indicated that he sold at least $300 to $400 worth of heroin to several customers each day. Moore also overlooks that the total quantity of heroin seized during the course of the conspiracy – 965 grams – included seizures from Lacour and Nelson, two individuals who served as his suppliers. That information was described in the factual basis, which Moore confirmed in open court to be accurate.

Also, during the rearraignment, Judge Berrigan detailed the charges against Moore and explained what the government would have to prove at trial for the jury to find him guilty. Judge Berrigan specifically told Moore: "The government would also have to prove the following: First, that you and at least one other person made an agreement to knowingly possess with intent to distribute at least one kilogram of heroin as charged in the Indictment . . . ." After acknowledging that he understood all of the elements that the government would have to prove, Moore advised the Court that he had discussed the case with his attorney and that he was satisfied with his attorney's services. Moore also affirmed under oath that he was pleading guilty knowingly, voluntarily, and of his own free will.

The Court emphasizes that Moore's "[s]olemn declarations in open court carry a strong presumption of verity." See United States v. Lampazianie, 251 F.3d 519, 524 (5th Cir. 2001) (alteration in original) (internal quotations omitted). Because

Moore has not demonstrated, by a preponderance of the evidence, that he did not understand the charges against him, he has not shown that his guilty plea was unlawfully induced or involuntarily entered.[5] Having failed to establish prejudice under Strickland, Moore's ineffective assistance of counsel claims must be denied.

IV.

Rule 11 of the Rules Governing Section 2255 Proceedings states:

> The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue.

A court may issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to obtain a certificate of appealability, the petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented [are] 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). Because Moore's motion to vacate is untimely and he has

---

[5] The Court also notes that Moore received a favorable plea agreement that eliminated his exposure to a life sentence and resulted in a 180-month sentence (which was subsequently reduced to 144 months).

16

not established a cognizable claim of ineffective assistance of counsel under Strickland, Moore has not made a substantial showing of the denial of a constitutional right.

Accordingly, for the foregoing reasons, IT IS ORDERED: that Darryl Moore's motion to vacate, set aside, or correct sentence is DENIED, and his habeas petition is dismissed with prejudice. IT IS FURTHER ORDERED: that the Court shall not issue a certificate of appealability.

New Orleans, Louisiana, August 30, 2019

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE